## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

RAY E. TOLER & WILLIAM T. TOLER,:

                      :

        Plaintiffs,         :

                      :

vs.                     :       5:04-CV-45 (DF)

                      :

ENGELHARD CORPORATION,   :

                      :

        Defendant.       :

## O R D E R

Before this Court are Defendant's Motion for Reconsideration/Clarification (doc. 144), and Plaintiffs' Motion to Amend (doc. 149).  Plaintiffs Ray and William Toler ("Tolers") seek to amend their complaint to add requests for separate damages for Engelhard's breach of the covenant of good faith and fair dealing, and for punitive damages.  (Pls.' Mot. Am., doc. 149, at 1.)  Defendant Engelhard Corporation ("Engelhard") seeks reconsideration of the portions of the Court's Order dated May 31, 2006 (doc. 142) dealing with the availability of punitive damages in this action, and the measure of damages for the Tolers' breach-of-contract claim.  (Def.'s Mot. Recons., doc. 144, at 1-5.)

1

I.     PROCEDURAL HISTORY

The relevant facts in this action have been outlined numerous times by the Court, and need not be repeated here.  The Court will, however, briefly chronicle the recent procedural history of this case.  On March 20, 2006, this Court entered an order (doc. 125) partially granting Defendant's Motion for Summary Judgment (doc. 72).  In the summary-judgment order, the Court concluded that there were genuine issues of material fact as to whether the parties modified the 1963 kaolin lease ("Lease") to allow Engelhard to move overburden from the leased premises to the Tolers' adjacent property.  (Order, doc. 125, at 13.)  The Court also determined that, if the jury found that the parties did not so modify their contract, the jury would then have to decide, among other things, whether or not Engelhard breached the implied duty of good faith and fair dealing by removing the overburden without the Tolers' permission.  (Order at 15.)

On April 3, 2006, Engelhard filed a Motion for Reconsideration (doc. 126) of the Court's summary-judgment order, seeking a determination that the Tolers were not entitled to rescind the lease even if they prevailed at trial, and that there was no jury question on the material breach or substantial compliance issues.  The Court partially granted Engelhard's motion, finding that the Tolers were not entitled to

rescission; however, the Court reiterated that issues of fact precluded summary judgment on the material breach and substantial compliance issues.  (Order, April 27, 2006, doc. 132, at 1-10.)

On May 5, 2006, the Tolers filed a Motion for Clarification/Reconsideration (doc. 134) of the Court's April 27th Order, challenging the Court's determination that rescission was not available as a remedy, and seeking the Court's guidance as to the measure of damages to be awarded if they prevailed at trial.  The Court denied the Tolers' motion on May 31, 2006, finding once again that the Tolers were not entitled to rescission, and noting that the measure of damages for their alleged property damage would be the diminution of the fair market value of the property and/or the cost of repair or restoration.  (Order, doc. 142, at 5.)  The Court also noted that the Tolers may be entitled to punitive damages if the jury finds evidence of wilful misconduct, malice, fraud, wantonness, oppression, or conscious indifference on the part of Engelhard.  (Order at 5.)  This statement prompted both Engelhard's Motion for Reconsideration/Clarification, and the Tolers' Motion to Amend.

## II.    LEGAL DISCUSSION

Engelhard's "Motion for Reconsideration/Clarification" of the Court's April 27, 2006 Order is, in substance, a motion for reconsideration.  Because Engelhard's

motion was filed within ten business days of the Court's May 31 Order, the Court will construe the motion as one filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

The decision to alter or amend a judgment under Rule 59(e) "is committed to the sound discretion of the district judge." *Am. Home Assur. Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985). Generally, a Rule 59(e) motion will be granted on one of the following grounds only: "an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or to prevent manifest injustice." *United States v. Battle*, 272 F. Supp. 2d 1354, 1357 (N.D. Ga. 2003). A party seeking reconsideration must "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 294 (M.D. Fla. 1993). The decision to alter or amend a judgment is an "extraordinary remedy." *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994).

Engelhard does not allege that reconsideration is warranted in this case due to an intervening change in controlling law or the availability of new evidence; thus, the Court will alter its previous ruling only if it is necessary to correct a clear error or to prevent manifest injustice. In its motion, Engelhard specifically challenges the

4

Court's determination that the Tolers may seek the award of punitive damages at trial. Engelhard also requests the Court to modify its ruling as to the measure of damages to be awarded if the Tolers prevail on their breach-of-contract claim at trial.

## A.   Does Georgia law allow the award of punitive damages on a breach-of-contract claim?

Before addressing the merits of the Tolers' motion to amend their complaint to add a prayer for punitive damages, the Court must first determine whether or not Georgia law permits the award of punitive damages in this action.  Engelhard submits that, even if the jury finds in the Tolers' favor, the Tolers cannot seek punitive damages because "punitive damages have never been authorized in Georgia for breach of contract, and bad faith alone is insufficient under [O.C.G.A.] § 51-12-5.1 to authorize punitive damages."  (Def.'s Mot. Recons., doc. 144, at 2.)

Generally, punitive damages cannot be awarded in a breach-of-contract action.  O.C.G.A.  § 13-6-10  (Lexis 2005); *Harris v. Distinctive Builders, Inc.*, 549 S.E.2d 496, 500 (Ga. Ct. App. 2001).  However, "[i]t is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation [a party] also violates a duty owed to plaintiff independent of contract to avoid harming him."  *Sheppard*

*v. Yara Engineering Corp.*, 281 S.E.2d 586, 587-88 (Ga. 1981) (quoting *Orkin Exterminating Co. v. Stevens*, 203 S.E.2d 587, 590 (Ga. Ct. App. 1973)).  Under Georgia law, "the excavation and removal of dirt from another person's land is a tort, unless authorized by a contract."  *Sheppard*, 281 S.E.2d at 587.  Even if a landowner executes a mineral lease permitting the excavation and removal of certain minerals from his property, if the lease does not authorize the removal of topsoil and overburden and makes no provision otherwise, the removal of these materials from the premises creates "a claim for the tort of conversion, if not trespass." *Id.*  "The duty not to remove topsoil and overburden" from a landowner's property arises "not from any contractual provisions, but from [the owner's] common law property rights in the soil in which he has not given the defendants any claim by contract." *Id.*

Here, the Tolers allege that Engelhard transferred over 100,000 cubic yards of overburden from the leased premises to their adjoining property (already subject to a kaolin lease with Huber Kaolin Company) without their authorization and in violation of the terms of the Lease.  As this Court has already held, a jury must decide whether or not the parties modified the terms of the Lease to allow Engelhard to remove overburden from the leased premises to the Tolers' adjacent property

6

pursuant to the kaolin exchange agreement executed between Engelhard and Huber. If the jury finds that the parties did not so modify the Lease, and if the jury further finds evidence of "wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences," O.C.G.A. § 51-12-5.1, then punitive damages may be awarded—not for Engelhard's breach of the Lease, but for Engelhard's alleged torts (i.e. trespass and unauthorized removal of overburden) committed independent of the contract.

**B.      To recover punitive damages, were the Tolers required to include a prayer for punitive damages in their complaint?**

Engelhard argues that, even if the Tolers would otherwise be entitled to recover punitive damages, because the Tolers did not include a special prayer for punitive damages in their complaint, as they were required to do by O.C.G.A. § 51-12-5.1, they cannot seek punitive damages at trial. The Tolers submit that O.C.G.A. § 51-12-5.1 is not applicable in federal court because its requirements are in conflict with, and therefore must yield to, Federal Rule of Civil Procedure 54(c). In the alternative, the Tolers seek to amend their Complaint to add a prayer for punitive damages. Before addressing the Tolers' motion to amend, however, the Court must

first determine whether or not O.C.G.A. § 51-12-5.1's pleading requirement is in

conflict with, and must yield to, Federal Rule of Civil Procedure 54(c).

According to O.C.G.A. § 51-12-5.1(d)(1), "[a]n award of punitive damages

must be specifically prayed for in a complaint. . . ." By contrast, Rule 54(c) provides,

in part, that "every final judgment shall grant the relief to which the party in whose

favor it is rendered is entitled, *even if the party has not demanded such relief in the*

*party's pleadings*." Fed. R. Civ. P. 54(c) (West 2006) (emphasis added). The Eleventh

Circuit has interpreted Rule 54(c) to mean that "a special prayer for punitive

damages [i]s unnecessary . . . [i]f the complaint alleges conduct that would support

a claim for punitive damages, and if evidence is presented creating a jury question

on such relief." *Scutieri v. Page*, 808 F.2d 785, 792 (11th Cir. 1987).

"Federal courts sitting in diversity are required to apply state substantive law

and federal procedural law." *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1296-97

(11th Cir. 1999), *vacated in part on other grounds*, 204 F.3d 1069. In *Hanna v. Plumer*,

380 U.S. 460 (1965), the Supreme Court developed a two-part test for determining

when a Federal Rule of Civil Procedure will prevail over, and displace, a state law.

As explained by the Eleventh Circuit:

[T]he court must ask whether the state law provision conflicts with a federal procedural rule.  If it does, the federal procedural rule applies and the state provision does not. . . . The only exception is where the advisory committee, the Supreme Court, and Congress have collectively erred and adopted a federal procedural rule that is either unconstitutional or should not have been adopted under the Rules Enabling Act because it is a matter of substantive law.

*Cohen*, 184 F.3d at 1296-97 (citing *Hanna*, 380 U.S. at 471).

According to the Supreme Court, the key inquiry in determining if a state law conflicts with a Federal Rule of Procedure is "whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court."  ***Walker v. Armco Steel Corp.***, 446 U.S. 740, 749-50 (1980).  "Typically, courts deem a federal rule sufficiently broad to control the issue when the court *cannot give effect to both the federal and state rules*."  17 James Wm. Moore et al., *Moore's Federal Practice* ¶ 124.03[1] (3d ed. 1998) (emphasis added).

If this Court were to apply the pleading requirements for punitive damages outlined in O.C.G.A. § 51-12-5.1(d)(1), the Tolers could not seek punitive damages at trial because they did not include a specific prayer for punitive damages in their complaint.  *See **Drug Emporium, Inc. v. Peaks***, 488 S.E.2d 500, 505-07 (Ga. Ct. App. 1997).  This outcome, however, creates a direct conflict with Rule 54(c).  *See **Scutieri***, 808 F.2d at 792.  Rule 54(c) is sufficiently broad to control the punitive-damages

9

issue because the Court cannot give effect to both O.C.G.A. § 51-12-5.1(d)(1) and Federal Rule 54(c).  The conflict between the two provisions is unavoidable: if O.C.G.A. § 51-12-5.1(d)(1)'s pleading requirement were applied in federal court, it would undoubtedly "impair the operation and effect of" Rule 54(c).  *See* **Cohen**, 184 F.3d at 1298.

Because a conflict exists between O.C.G.A. § 51-12-5.1(d)(1) and Rule 54(c), **Hanna** requires the Court to apply the federal rule unless it is unconstitutional or invalid under the Rules Enabling Act.  *See* **Hanna**, 380 U.S. at 471.  Federal Rules of Procedure are presumed to be both constitutionally and statutorily valid.  *See* **Burlington N. R.R. v. Woods**, 480 U.S. 1, 5 (1987).  The Court finds nothing that would indicate that Rule 54(c) is either unconstitutional or invalid under the Rules Enabling Act; therefore, this Court will apply Rule 54(c).

With Rule 54(c) and its attending rules of construction[1] in mind, the Court examines the allegations in the Tolers' complaint.  In paragraph 21, the Tolers allege that "the conduct of Defendant Engelhard in proceeding to move overburden from this property, in clear violation of the terms of the contract and without authority . . . shows *wilful, malicious, and wanton conduct* on Defendant's part. . . ."    (Compl.,

---

[1] *See* **Scutieri**, 808 F.2d at 792.

doc. 1, at ¶ 21.)  In addition, the evidence presented by the Tolers thus far, e.g.,

letters written to Mr. Joe McKenzie, Engelhard's agent, and phone calls wherein

Plaintiffs specifically informed Engelhard that it did not have permission to remove

overburden from the leased premises, is sufficient to create a genuine issue of

material fact as to whether Engelhard engaged in "wilful misconduct, malice, fraud,

wantonness, oppression, or that entire want of care which would raise the

presumption of a conscious indifference to consequences."  O.C.G.A. § 51-12-5.

Applying Rule 54(c), then, the Court finds that, because the Tolers alleged conduct

that would support a claim for punitive damages, and they have presented evidence

creating a jury question on that issue, the Court may instruct the jury on the

punitive-damages issue.  Because the Tolers are entitled to present evidence on the

punitive-damages issue under Rule 54(c), no amendment to their complaint is

necessary.  Accordingly, the Tolers' Motion to Amend Complaint (doc. 149) is

**MOOT**.  To the extent that Engelhard's Motion for Reconsideration/Clarification

(doc. 144) sought a ruling from this Court that the Tolers were not entitled to seek

punitive damages at trial, the motion is **DENIED**.

**C.      What is the proper measure of damages for the Tolers' breach-of-contract claim?**

This Court noted in the May 31, 2006 Order that, "[i]f plaintiffs prevail on the breach-of-contract issue at trial, their measure of damages will be the diminution of the fair market value of the property as the result of Defendant's breach and/or the cost of restoring the property to the condition it was in before the breach, so long as the cost of repair is reasonable and bears some proportion to the injury sustained." (Order, doc. 142, at 6.)   Engelhard's Motion for Reconsideration/ Clarification requests this Court to rule that the proper measure of damages on the Tolers' breach-of-contract claim is the diminution of the fair market value of the leased premises as a result of Engelhard's alleged breach—not the cost to restore the leased premises to the condition it was in before the breach, as the Tolers contend.

As the Court noted in the May 31 Order, Georgia's "general rule for the measure of damages involving real property is the diminution of the fair market value of the property and/or the cost of repair or restoration." *Allgood Road United Methodist Church, Inc. v. Smith*, 325 S.E.2d 392, 394 (Ga. Ct. App. 1984).  Georgia courts have not been wholly consistent, however, when applying this general rule to cases involving damage to real property.

12

Engelhard contends that the proper measure of damages in a case involving damage to real property was articulated by the Georgia Court of Appeals in *Whitaker Acres v. Schrenk*, 316 S.E.2d 537 (Ga. Ct. App. 1984).  In *Whitaker Acres*, the buyer-plaintiff purchased a residential lot from a defendant-vendor, and timely filed and recorded the warranty deed.  *Id.* at 537.  The buyer then "expended considerable time and personal labor clearing the lot."  *Id.*  Sometime after the buyer purchased the lot, the vendor sold the same lot to a different buyer, who did not perform a title search before consummating his purchase of the lot.  *Id.*  The second buyer then authorized the grading and excavation of the lot so that he could begin construction on his home.  *Id.* at 538.  Only after this work was done did the first buyer (the plaintiff), vendor, and second buyer (also a defendant) realize that the vendor had sold the lot to two different buyers.  The plaintiff sued the defendants for trespass, and recovered compensatory and punitive damages at trial.  The defendants appealed.

The main issue on appeal centered on the plaintiff's appropriate measure of damages.  The defendants argued that the trial court erred by not instructing the jury that the only measure of damages recoverable was the difference between the fair market value of the lot before and after the trespass.  The plaintiff argued that

13

the jury was properly charged, and that the proper measure of damages was the "cost of restorative work on the lot." *Id.* at 539. The appellate court concluded that the jury charge was improper because, in actions involving damage to the property itself, as opposed to damage to buildings, fences, or other improvements, the proper measure of damages "is the diminution in the market value of the land involved, that is, the difference between the market value of the land before and after injury." *Id.* at 540. The court continued, "[i]f recovery is sought for injury to the freehold itself by reason of the taking or destroying of the property attached thereto, the measure of damages should be the difference between the value of the land before and its value after the injury." *Id.*

Notwithstanding the principles of law articulated in ***Whitaker Acres***, the Georgia Supreme Court recently recognized that a plaintiff suing for damage to his real property could recover "the cost to repair and restore land . . . as long as restoration would not be an 'absurd undertaking.'" ***Georgia Northeastern Railroad, Inc. v. Lusk***, 587 S.E.2d 643, 645 (Ga. 2003) (quoting ***Atlanta Recycled Fiber Co. v. Tri-Cities Steel Co.***, 262 S.E.2d 554, 558 (Ga. Ct. App. 1979)). In ***Lusk***, a property owner sued a railroad company to recover for soil erosion on his property. According to the owner, the railroad company's failure to remove debris that had

14

accumulated under a railroad trestle on the owner's property diverted the natural flow of a river onto the owner's land, causing the erosion of approximately 588,000 cubic square feet of soil. *Id.* at 644-45. Recognizing that the owner could recover restoration costs for the nuisance created by the defendant, the Court noted that this measure of damages was available even if the "costs exceed[ed] the diminution in [the property's] value" caused by the defendant's conduct. *Id.* at 645. The Court cautioned, however, that "[t]he cost of restoration may not be disproportionate to the diminution in the property's value. Rather, the cost of repair must be reasonable and bear some proportion to the injury sustained." *Id.* (internal citations and quotation marks omitted). Although the case was ultimately reversed and remanded for retrial on the damages issue, the reversal was based on the Court's determination that an impermissible double recovery might have occurred. *Id.*

Of the two cases discussed above, the Court finds the reasoning in *Lusk* to be the most sound, and therefore the most persuasive. Although Engelhard submits that *Lusk* "did not in any way alter the Georgia law or Judge Carley's application of that law in the *Whitaker Acres* case," the Court disagrees. Here, Engelhard's argument for diminution-in-value damages is based almost entirely on the fact that the injury alleged was to the realty itself, as opposed to any improvements to the

15

property.  In *Lusk*, however, the damage alleged was to the property itself, and the Georgia Supreme Court recognized restoration costs as a proper measure of damages.  While it is true that, under *Lusk*, the Tolers cannot recover damages for the diminution in the fair market value of their property due to Engelhard's alleged breach <u>and</u> damages for restoration costs, it is equally apparent that the jury may decide to award either measure of damages, so long as the cost of restoration is reasonable and bears some proportion to the injury sustained.

Accordingly, to the extent that Engelhard's Motion for Reconsideration/ Clarification seeks a ruling that the only measure of damages recoverable for the Tolers' breach-of-contract claim is the diminution in the fair market value of the leased premises due to Engelhard's alleged breach, it is hereby **DENIED.**

## III.    CONCLUSION

For the reasons stated above, the Tolers' Motion to Amend (doc. 149) is **MOOT**, and Engelhard's Motion for Reconsideration/Clarification (doc. 144) is **DENIED**.

SO ORDERED, this 14th day of September, 2006.

**/s/ Hugh Lawson**
HUGH LAWSON, JUDGE
UNITED STATES DISTRICT COURT

HL/jab

16